---

### THE MARY.*

(*District Court, E. D. Pennsylvania.* November 20, 1882.)

1. TOWAGE—NEGLIGENCE—PROXIMATE CAUSE—BURDEN OF PROOF.
    In an action to recover damages for the loss of a barge three days after alleged negligent towage, the burden of proof rests upon the libelant to show that the alleged negligence was the proximate cause of the injury.

2. TOWAGE CONTRACT CONSTRUED.
    Where a railroad company sold a ticket, stipulating that the tug Delaware would tow the libelant's barge to Smyrna, Delaware, and, by an arrangement with that tug, the tug Mary took the former's place, received the ticket, but with the libelant's consent towed the barge to the mouth of Smyrna creek, eight miles below the town, and three days afterwards the barge, while being poled up, grounded and was lost, the tug Mary is not liable for failure to tow up to the town.

In Admiralty. Hearing on libel and answer.

Libel filed by Michael Reilly, master of the barge Chihuahua, for damages occasioned by the loss of the barge, which, the libelant contended, had been taken in tow by the tug to be towed to the town of Smyrna, Delaware, but was abandoned in an unsafe place in Smyrna creek, eight miles from the destination, and while poling up grounded and became a total wreck. It appeared that an agent of the Philadelphia & Reading Railroad Company sold to libelant a ticket, stipulating that the tug Delaware would tow the barge to Smyrna, Delaware, and that by an arrangement with that tug and the Mary, the latter took her place, received the ticket, and towed the barge four miles up the creek at the first bridge, but eight miles from the town, and three days afterwards, while poling up the creek, the

*Reported by Albert B. Guilbert, Esq., of the Philadelphia bar.

barge grounded and was abandoned. The respondent claimed that her express agreement had been to tow merely to the mouth of the creek; that the injury was too remote, and in fact resulted from unskillful poling; and that a libel *in rem* was not the remedy for the non-feasance of a towage contract, which was the only cause of action libelant could have.

*Alfred Driver* and *J. Warren Coulston*, for libelant.

*Curtis Tilton* and *Henry Flanders*, for respondent.

BUTLER, D. J. The libelant's contract was with the Reading Railroad Company. The latter, having arranged with the tug Delaware for the towage of barges from Fairmount to the mouth of Smyrna creek, and other places, was in the habit of issuing towage tickets between the points; and in this instance issued one to *Smyrna*, for libelant. In pursuance of an understanding between the respondent and the tug Delaware, the former occasionally took the latter's place in towing vessels for the railroad company; and did so in this instance. While the ticket issued shows a contract by the company to tow the barge to Smyrna, there is evidence of a different understanding between the company's agent and the libelant. Whether the railroad company may be held to the terms shown by the ticket need not be considered. The respondent was not a party to this contract. Taking the Delaware's place in her arrangement with the railroad company, she became obliged to do what was thereby stipulated for, but no more. In this instance it became her duty to tow the libelant into the mouth of the creek; but unless it is shown that she, in some way, made herself a party to the railroad company's contract for towage to Smyrna, her duty ended there. This is not shown. Had she known the terms stated by the ticket, before entering upon the service, she should, probably, be held to an undertaking to comply with them. She did not, however, see the ticket, or become aware of its language, until near the mouth of the creek. Learning that the barge was loaded for Smyrna she informed the libelant that she would not take him there, and called his attention to the preparations necessary for getting up the creek alone. These preparations, in part at least, were made. The respondent nevertheless did tow the libelant up through the mouth of the creek, to the first bridge, a distance of several miles, and there cast off the lines and returned. Her duty was thus fully discharged.

The libelant's allegation that he requested to be taken to a wharf, near the bridge, and that he was left in an unsafe position, from which the wharf could not be reached without aid, is not, in my judgment

sustained. There is testimony that he requested to be taken to the wharf, but it is met by testimony to the contrary, to my mind, of greater weight. Aside from what the respondent's witnesses say on the subject, the probabilities are against the libelant. That he intended to pursue his way up the stream with the tide, can hardly be doubted. He had provided for doing so, in procuring a boat and anchor, and, as he doubtless believed at the time, a pilot familiar with the channel. As no motive whatever can be seen for refusing the alleged request, the inference is reasonable that it would not have been refused if made. Furthermore, it is not shown that the situation in which the libelant was left was dangerous, even if he proposed to go no further at the time.

Sufficient has been said to indicate the court's reasons for the decree. It would be out of place to inquire into the railroad company's liability under its contract, as shown by the ticket, or to enter upon the question whether the libelant's misfortune arose from failure to comply with the contract, or from fault of his own in neglecting to employ the pilot whose services were tendered, and attempting to pole his boat up a channel of which he was ignorant, or failing to seek the aid of the steam-barge, which passed him on the way. The libel must therefore be dismissed.